IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


UNITED STATES OF AMERICA       §
                               §
v.                             §          CRIMINAL NO. H-08-323-1
                               §
CRAIG CURTIS                   §          (Civil Action No. H-12-1788)


## MEMORANDUM AND ORDER

This criminal prosecution is before the Court on Defendant Craig Curtis's

motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 ("§ 2255

Motion") [Doc. # 620].  Curtis asserts that his due process rights were violated and

that he received constitutionally ineffective assistance of trial and appellate counsel.

The United States filed its Response and Motion to Dismiss [Doc. # 628], and Curtis

filed a Reply [Doc. # 632].

The Court carefully reviewed all pertinent matters in this criminal case.

Additionally, on June 6, 2013, the Court conducted an evidentiary hearing on Curtis's

claims that his attorney denied his request to testify at trial, and that trial counsel

rendered constitutionally ineffective assistance when he failed to object to Curtis's

absence during a portion of jury selection.  Based upon this review, the evidence and

arguments presented at the June 6 hearing, the Court's clear recollection of the

criminal proceedings in this case, and the application of governing legal authorities, the Court **grants** the United States' Motion to Dismiss, **denies** Curtis's § 2255 Motion and **dismisses** the corresponding civil action (No. H-12-1788) for reasons set forth below.

## I.    <u>BACKGROUND</u>

In May 2008, Curtis and eight co-defendants were charged by indictment with conspiracy to commit wire fraud, production of false documents, and false representation of social security numbers.   Curtis was also charged with aiding and abetting wire fraud and with aggravated identity theft.   The charges arose from a mortgage loan fraud scheme between January 2006 and June 2007.   Specifically, Curtis engaged in a scheme to pay various individuals to find straw buyers to purchase newly built townhomes.   The straw buyers would make false representations on the loan applications in order to qualify for mortgage loans, despite having no intention to occupy the homes as their primary residence.   The straw buyers would use fraudulent driver's licenses and social security cards obtained from co-defendant Carlin Joubert.   The straw buyers would purchase the townhomes at highly inflated prices, causing Curtis to receive large payments at closing.   In connection with the scheme, wire transfers were made from banks to title company accounts.

After the charges against his co-defendants were resolved, Curtis proceeded to trial before a jury in December 2008. The jury returned a verdict of guilty.

The Presentence Report ("PSR") used a base offense level of 7, increased 18 levels for an amount of loss in excess of $2.5 million. The PSR included a recommendation for a two-level adjustment because Curtis derived more than $1 million in gross receipts from the offense conduct, and a four-level adjustment for his aggravated role in the offense. The United States and Curtis filed written objections to the PSR.

At sentencing, the Court sustained Curtis's objection regarding the loss amount, reducing the enhancement from 18 levels to 16 levels. Together with other modifications to the calculation in the PSR, the Court calculated Curtis's total offense level at 27, his criminal history category at V, and his imprisonment range under the Sentencing Guidelines at 120-150 months. The Court sentenced Curtis to a total term of imprisonment of 144 months, followed by three years of supervised release. The Court imposed a $600 special assessment and restitution in the amount of $2,085,396.00, for which Curtis was jointly and severally liable with his co-defendants.

Curtis filed a timely Notice of Appeal. The Fifth Court affirmed Curtis's conviction and sentence. *See United States v. Curtis*, 635 F.3d 704 (5th Cir. 2011).

Curtis's petition for a writ of certiorari to the United States Supreme Court was denied on October 7, 2011.

Curtis filed his § 2255 Motion on June 14, 2012.  In the § 2255 Motion, Curtis asserts that his right to due process and his right to effective assistance of counsel were violated during trial, at sentencing, and during direct appeal.  Curtis challenges specifically his absence during a portion of jury selection, counsel's failure to assert a venue defense, counsel's refusal to allow him to testify at trial, counsel's failure to file a motion asserting a violation of the Speedy Trial Act, and counsel's failure to challenge a variety of other alleged trial and sentencing errors.  The § 2255 Motion has been fully briefed, the Court has conducted an evidentiary hearing, and the Motion is ripe for decision.

## II.    APPLICABLE LEGAL STANDARDS

### A.    Standard for § 2255 Relief

To obtain collateral relief under 28 U.S.C. § 2255, a defendant "must clear a significantly higher hurdle" than the standard that would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).  "Following a conviction and exhaustion or waiver of the right to direct appeal, [courts] presume a defendant stands fairly and finally convicted."  *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998).  "As a result, review of convictions under [§] 2255 ordinarily is limited to questions

of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice." *Frady*, 456 U.S. at 166. Of course, this procedural bar does not apply to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel, "since no opportunity existed [before the district court] to develop the record on the merits of the allegations."[1] *United States v. Higdon*, 832 F.2d 312, 313-14 (5th Cir. 1987); *see also Massaro v. United States*, 538 U.S. 500 (2003).

### B.    Standard for Ineffective Assistance of Counsel

Curtis maintains that he is entitled to relief from his conviction and sentence because he was denied effective assistance of counsel at trial, sentencing, and on direct appeal. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to have the assistance of counsel at trial. *See* U.S. CONST. amend. VI; *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). The right to counsel guaranteed by the Sixth Amendment includes "the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

---

[1]    Curtis states each of his claims as asserting both a due process claim and an ineffective assistance of counsel claim. The due process aspect of the claim regarding his presence at jury selection was decided by the Fifth Circuit on direct appeal. *See Curtis*, 635 F.3d at 715-16. The remaining due process claims were not raised on direct appeal and are procedurally barred. Additionally, as is apparent from the Court's analysis of the ineffective assistance of counsel claims, Curtis's due process claims lack merit and do not provide a basis for relief under § 2255.

Claims for ineffective assistance of counsel are analyzed under the following two-prong standard:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail under this standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000).

The first prong of the governing standard is only satisfied where the defendant shows that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead ha[s] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688). Scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances

of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.  To establish ineffective assistance of counsel, defense counsel must have "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687.  "There is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Webster,* 392 F.3d 787, 793 (5th Cir. 2004) (quoting *Strickland,* 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Woodward v. Epps*, 580 F.3d 318, 329 (5th Cir. 2009) (citations omitted).  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 566 U.S. at 690). There is a "strong presumption" that defense counsel's challenged conduct "might be considered sound trial strategy." *Bell v. Cone*, 585 U.S. 685, 698 (2000).

To prove prejudice, a defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different."[2]  *Wiggins*, 539 U.S. at 524; *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  Therefore, the prejudice analysis focuses on whether the alleged errors by counsel, separately or cumulatively, undermine "confidence in the process afforded the criminally accused."  *Virgil v. Dretke*, 446 F.3d 598, 612 (5th Cir. 2006).

## IV.  ANALYSIS OF SPECIFIC CLAIMS

### A.  Defendant's Absence During Portion of Jury Selection

Curtis claims that his attorney rendered ineffective assistance when a portion of the jury selection process, specifically the exercise of peremptory strikes, took place in Curtis's absence.[3]  Curtis claims that he wanted his attorney to strike two potential jurors who had been past victims of credit card fraud.

Curtis unsuccessfully raised on direct appeal the substantive claim regarding his absence during jury selection.  The Fifth Circuit held that the "right to presence imposes two requirements on the exercise of peremptory challenges.  First, the defendant must be present for the substantial majority of the jury selection process."  *Curtis*, 635 F.3d at 715.  The second aspect of the presence requirement is that "the

---

[2]   Contrary to the argument by Curtis's attorney at the June 6 hearing, the Supreme Court in *Wiggins* did not change the standard for showing prejudice for a claim of ineffective assistance of counsel.

[3]   The Court discusses this claim as Curtis clarified it during the June 6 hearing.

defendant must be present in the courtroom at the moment when the court gives the exercise of peremptory challenges formal effect by reading into the record the list of jurors who were not struck." *Id.*

In this case, the record reflects that Curtis was present before jury selection began. Indeed, the Court noted specifically that "Mr. Curtis has arrived in a suit and tie and a blue shirt." *See* Trial Transcript [Doc. # 436], p. 272. Curtis was present during the entire voir dire process involving the full jury panel. The Court then identified several individual prospective jurors for whom there were additional questions to be asked in private, and released the remainder of the jury panel for lunch. *See id.* at 463. At the end of the Court's questioning of those individual jurors who needed to discuss matters privately, Curtis was taken "upstairs" for lunch. *See id.* at 509. No further questioning of jurors occurred, and counsel were released for the lunch recess. *See id.* at 510.

Curtis's trial attorney, John Friesell, testified at the evidentiary hearing that after voir dire was completed, all members of the jury panel were excused so the attorneys could make their peremptory strikes. At that time, the Deputy United States Marshal asked Curtis if he wanted to be taken upstairs for lunch and Curtis responded that he did. During voir dire and prior to going upstairs for lunch, Curtis advised Friesell that he wanted Juror # 48, an African-American female, to be on the jury.

Friesell did not strike Juror # 48, and she became a member of the jury.  Friesell testified that when Curtis returned to the courtroom after lunch, he inquired about Juror # 48 and no other prospective juror.  The Court finds Friesell's testimony credible.  It is consistent with his prior affidavit.  *See* Affidavit of John Friesell dated May 3, 2013 [Doc. # 656].  Based on Friesell's testimony, the trial transcript, and the Court's recollection of the jury selection proceedings, the Court finds that Curtis was present in the courtroom throughout voir dire.  The Court finds that Curtis was physically absent from the courtroom when Friesell made the peremptory strikes, but had previously advised Friesell that he did not want Juror # 48 stricken.  Curtis was present for the substantial majority of the jury selection process and, although not present for peremptory strikes, had made his views regarding the prospective jurors known to his attorney.

The Court finds also that Curtis was "present in the courtroom at the moment when the court [gave] the exercise of peremptory challenges formal effect by reading into the record the list of jurors who were not struck."  *Curtis*, 635 F.3d at 715.  The Court did not read the list of jurors who had been selected to serve until after everyone returned from the lunch recess.  Although the record does not reflect affirmatively that Curtis was in the courtroom at the time, the Court is confident that it would never read the list of jurors who were selected to serve unless and until the defendant was present

in the courtroom.  Indeed, Curtis clarified at the evidentiary hearing that he does not claim that he was absent from the courtroom when the list of jurors was read and the jury was empaneled.

Moreover, Friesell understood that a successful objection to Curtis's absence during peremptory strikes would result only in receiving a new, different panel. Friesell testified that he believed, based on his professional experience and judgment, that the existing panel was a favorable one, and he elected not to object to Curtis's absence during the peremptory strikes.  The Court credits this testimony.  Friesell's decision not to object to Curtis's absence during peremptory strikes was not constitutionally ineffective.

Because the two elements of Curtis's right to be present during jury selection were satisfied, Friesell's failure to object to Curtis's absence during peremptory strikes was not constitutionally deficient and did not prejudice Curtis's defense.  The Court finds that Friesell evaluated the jury panel carefully, and made the allowed number of strikes in Curtis's best interest.  Friesell did not strike the one juror Curtis asked him to keep.  Relief pursuant to § 2255 based on this claim of ineffective assistance of counsel is denied.

B.    **Failure to Raise Venue Defense**

Curtis was charged with conspiracy to commit wire fraud and three substantive wire fraud counts.  One substantive count involved a wire transfer from a bank in New York to a bank in Houston, Texas.  The second involved a wire transfer from a bank in New York, and the third involved a wire transfer from a bank in Ohio, both to a bank in Louise, Texas.  Houston and Louise are both located within the Southern District of Texas.

Curtis claims that his trial counsel was constitutionally ineffective for failing to argue that venue in the Southern District of Texas was improper because the wire transfers went through the Federal Reserve Bank in Dallas, Texas, which is not located within the Southern District.  It is Curtis's position that wire transfers "terminate" at the Federal Reserve Bank and, in support of that position, he cites *Boruff v. United States*, 310 F.2d 918 (5th Cir. 1962).  *Boruff*, however, is factually distinguishable.  In that case, the victim sent funds from Michigan to Atlanta, Georgia, by Western Union telegraph.  *Id.* at 922.  The next day, by separate transaction, the defendant sent the funds from Atlanta (in the Northern District of Georgia) to Thomasville, Georgia (in the Middle District of Georgia).  *Id.*  The Fifth Circuit noted that the victim did not intend to send the funds to Thomasville.  *Id.*  The Fifth Circuit held that the only interstate transfer was from Michigan to Atlanta, a transfer

completed upon its receipt in Atlanta. *Id.* at 923.  Therefore, under those facts, the court held that there was no venue in the Middle District of Georgia. *Id.*

Unlike the situation in *Boruff*, this case involved wire transfers that were sent from out-of-state banks to banks located in the Southern District of Texas as single transactions.  It does not matter whether the transfers passed through the Federal Reserve Bank in Dallas on their way from out of state into the Southern District; each transfer was sent as a single transaction that was not completed until it arrived at the destination bank account in this District.  Venue in this District was proper and defense counsel was not constitutionally ineffective for failing to argue otherwise.

### C.   Denial of Right to Testify

Curtis claims that his attorney denied him the right to testify on his own behalf at trial.  A criminal defendant has the right to testify in his own defense. *See, e.g., United States v. Flores-Martinez*, 677 F.3d 699, 708 (5th Cir. 2012) (citing *Harris v. New York,* 401 U.S. 222, 225 (1971); *Rock v. Arkansas,* 483 U.S. 44, 49–53 (1987); *Emery v. Johnson,* 139 F.3d 191, 198 (5th Cir. 1997)).  The Court conducted an evidentiary hearing on this issue on June 6, 2013.

Friesell, Curtis's trial attorney, testified during the hearing that he advised Curtis well before trial of his right to testify and that Curtis elected not to testify on his own behalf.  Friesell testified that Curtis never advised him that he had changed

his mind and wanted to testify at trial.  The Court finds Friesell's testimony credible. It is consistent with the prior affidavit submitted by Friesell.  *See* Affidavit of John Friesell dated August 17, 2012 [Doc. # 627], ¶ 3.

The hearing testimony of Curtis's appellate attorneys, Jani Maselli Wood and Nancy Harrison, further supports Friesell's testimony.  Wood and Harrison each testified that at no time during their respective representation of Curtis during his appeal did he mention that he had asked to testify at trial and Friesell denied that request.

Curtis's own testimony at the evidentiary hearing fails to refute Friesell's testimony.  Curtis testified that during trial he asked whether Friesell was going to call him as a witness, and Friesell told him no.  This testimony is not inconsistent with Friesell's testimony that Curtis had previously elected not to testify at trial and that Friesell supported Curtis's decision.

Based on the Court's consideration of the full record, including testimony at the evidentiary hearing, the Court finds that Curtis advised Friesell that he did not want to testify at trial, and that Curtis did not later express to Friesell that he wanted to testify.  At no time did Friesell tell Curtis that he could not testify.[4]  As a result, Curtis

---

[4]    The Court does not credit Curtis's testimony to the contrary.

was not denied his constitutional right to testify on his own behalf at trial and is not entitled to relief under § 2255 on this claim.

### D.    Failure to File Motion Asserting Violation of Speedy Trial Act

Curtis claims that his attorney was constitutionally ineffective by failing to file a motion asserting that the Speedy Trial Act had been violated.  The Speedy Trial Act requires that a federal criminal trial begin within 70 days after the defendant is charged or makes an initial appearance, with certain periods of delay excluded from the computation of the 70-day period.  *See* 18 U.S.C. § 3161.

Curtis admits that he executed a waiver of his Speedy Trial rights and that he filed numerous pretrial motions.  Curtis argues, however, that the waiver and the Court's findings regarding excludable time were inadequate.  Curtis's allegations are refuted by the record.  The Speedy Trial Act provides that a period of delay is excludable where a continuance is granted and the Court finds, after considering relevant factors, that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  *See* 18 U.S.C. § 3161(h)(7).  In this case, the Court found orally on the record that a failure to grant a continuance would unreasonably deny a codefendant the reasonable time necessary for effective preparation, and that the other defendants would benefit from additional time to conduct further investigation.  *See* Transcript [Doc. # 271] of Pretrial

Conference on September 9, 2008, p. 16.  The Court made similar findings in writing at an earlier point in the proceedings, ruling that a failure to grant the codefendant's requested continuance would likely result in a miscarriage of justice.  *See* Hearing Minutes and Order [Doc. # 174].  On these bases, the Court found that a period of excludable delay continued until the time of trial.  *See id.*  Curtis's rights under the Speedy Trial Act were not violated in this case, and defense counsel was not constitutionally ineffective for failing to argue otherwise.

### E.    Alleged Deficiencies During Trial

***Handwriting Claim***. – United States Secret Service Special Agent Vincent Edwards testified as a witness for the United States.  When shown a Government Exhibit, Edwards testified that it contained Curtis's signature.  *See* Trial Transcript [Doc. # 437], p. 625.  Edwards then testified that he had, in the course of his investigation in this case, seen Curtis's signature in his bank records and that the signature on the exhibit was similar to the signatures he had seen before.[5]  *See id.*  Curtis claims that his attorney provided ineffective assistance by failing to challenge the agent's "unqualified expert testimony."

---

[5]      The jury had the opportunity to view and evaluate the signatures for themselves and could, therefore, weigh Edwards's testimony.

It is clear from the record that Edwards did not testify as an expert or offer expert testimony.  Instead, he testified that he had reviewed Curtis's signature in Curtis's own bank records – documents the validity of which Curtis does not challenge.  Having seen signatures that were not contested, Edwards testified that the signature on the Government exhibit was similar.   The testimony was not objectionable.  *See, e.g., United States v. Ortiz*, 176 U.S. 422, 429 (1900); *United States v. Kilgore*, 518 F.2d 496, 498 (5th Cir. 1975).  In *Kilgore*, the Fifth Circuit held that "anyone familiar with the handwriting of a given person" is allowed to testify that a signature is in the handwriting of that other person.  *Id.*  A person has adequate familiarity to be able to present such testimony if he "has seen writings purporting to be those of the person in question under circumstances indicating their genuineness." *Id.*  In this case, Edwards had adequate familiarity with Curtis's signature by having seen it in unchallenged bank records and, therefore, was able to testify that the signatures were similar without being qualified as an expert witness.  Curtis's request for § 2255 relief on this claim is denied.

**"*Variance*" Claim**. – Curtis argues that his attorney was ineffective by failing to raise the improper "variance" in connection with the aggravated identity theft counts.  Curtis argues that an object of the conspiracy count was that he unlawfully "produced" false identification, while the substantive count charged that he "used"

false identification.  Review of the Indictment [Doc. # 1] in this case establishes conclusively that this claim is without merit.

In the conspiracy count, Curtis is charged with conspiring with Carlin Joubert and others to "produce" false identification documents.  *See* Indictment, pp. 3-4.  A substantive count of production of false identification documents was charged against Joubert, charging that she – an alleged member of the conspiracy – "knowingly and without lawful authority produced a false identification document . . .."  *See id.* at 15.  The substantive aggravated identity theft charge against Curtis, on the other hand, charged that he "knowingly and without lawful authority used a means of identification of another . . .."  *See id.* at 16.  Curtis is charged with engaging in a conspiracy with Joubert to "produce" false identification documents, while the substantive counts specify that Joubert produced the documents and Curtis used them.  There is no "variance" or other inconsistency, and defense counsel was not ineffective for failure to argue there was.

**"*Sleeping Juror*" Claim**. – The record reflects that one of the jurors appeared to be sleeping during jury selection and opening statements.  *See* Trial Transcript [Doc. # 437], pp. 601-02.  Curtis argues that his attorney was ineffective for failing to ask the Court to question this "sleeping juror" and to ask the Court to remove him from the jury.

The record reflects further that the Court observed that, when testimony began, the juror seemed "more attentive today and [seemed] to have gotten into the whole process." *See id.* at 837. The Court's recollection is that the juror did not sleep during any testimony, closing arguments, or the Court's instructions to the jury.

"A sleeping juror does not violate a defendant's due process rights unless the defendant can show he was prejudiced to the extent that he did not receive a fair trial." *United States v. Fernandez-Hernandez*, 652 F.3d 56, 74-75 (1st Cir. 2011); *see also United States v. Steele*, 390 F. App'x 6, 14 (2d Cir. Aug. 4, 2010); *Myree v. United States*, 2007 WL 2746999, *6 (E.D. Tenn. Sept. 19, 2007). This is particularly true where, as here, the Court was attentive to the issue and agreed with counsel to remain watchful. *See United States v. Battle*, 264 F. Supp. 2d 1088, 1192 (N.D. Ga. 2003). Thereafter, the Court observed that the juror was sufficiently attentive during the testimony and remainder of the trial. *See United States v. Hui*, 64 F. App'x 264, 266 (2d Cir. Apr. 18, 2003). Additionally, assuming the juror slept during any part of the testimony – an assumption contrary to the record – any sleeping would have been only during testimony of a government witness. *See Petit-Homme v. McNeil*, 2009 WL 1884399, *14 (S.D. Fla. June 30, 2009).

Curtis has not shown that the juror was actually asleep during any phase of the proceedings, and the record reflects that the juror was observed to be "more attentive"

after the first day.  As a result, defense counsel's decision not to challenge the juror was not deficient or prejudicial to Curtis's right to a fair trial.  Relief under § 2255 on this claim is denied.

### F.    Ineffective Assistance at Sentencing

In the PSR, the offense level was calculated using a loss amount of "more than $2,500,000" resulting in an enhancement of 18 points.  Curtis argues that his attorney rendered constitutionally ineffective assistance by failing to object to the financial loss calculation proposed in the PSR.  Specifically, Curtis complains that his attorney failed to object to the inclusion of certain properties in the loss calculation.

The record reflects that Curtis's attorney filed written objections challenging the loss calculation.  *See* Objections [Doc. # 301].  At sentencing, the Court specifically noted that the Objections had been received, reviewed, and considered. Indeed, the Court agreed that the lower loss amount was appropriate, and reduced the enhancement to 16 points rather than the 18 points recommended in the PSR.  Curtis's assertion that defense counsel failed to challenge the loss amount calculation is refuted by the record and does not provide a basis for § 2255 relief.

### G.    Ineffective Assistance on Direct Appeal

Curtis argues that appellate counsel was constitutionally ineffective for failing to assert the issues discussed above as bases for the appeal.  As with claims of

ineffective assistance of trial counsel, to prove ineffective assistance of appellate counsel the defendant must show both deficient performance and prejudice. *Strickland,* 466 U.S. at 687.  To show prejudice, the defendant must show that, but for appellate counsel's deficient performance, there is a reasonable probability he would have prevailed on appeal.  *Smith v. Robbins,* 528 U.S. 259, 285 (2000).

For the reasons discussed above, the issues identified in Curtis's § 2255 Motion are without merit.  Appellate counsel's failure to assert these claims on appeal was neither deficient performance nor prejudicial.

## V.   <u>CERTIFICATE OF APPEALABILITY</u>

Any review of this Court's decision on Curtis's post-judgment motion for relief from his conviction and sentence is governed by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), codified as amended at 28 U.S.C. § 2253(c). Therefore, a certificate of appealability is required before an appeal may proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).

A certificate of appealability will not issue unless the movant makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a movant to demonstrate "that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong."  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, a movant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the movant must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not find the assessment of Curtis's constitutional claims debatable or wrong.  Because the defendant does not otherwise allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## V.     CONCLUSION AND ORDER

Curtis has failed to establish that the alleged shortcomings by defense counsel, either separately or cumulatively, rose to the level of constitutionally ineffective assistance of counsel or violated his due process rights.  As a result, Curtis is not entitled to relief under 28 U.S.C. § 2255, and it is hereby

**ORDERED** that the United States' Motion to Dismiss [Doc. # 628] is **GRANTED**, Curtis's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 [Doc. # 620] is **DENIED**, and the corresponding civil action (H-12-1788) is **DISMISSED** with prejudice.  It is further

**ORDERED** that a certificate of appealability is **DENIED**.

The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas, this 17th day of **June, 2013**.

Nancy F. Atlas
United States District Judge